## FREER v. TUPPER.

1. There is always a presumption in favor of legal process, regular in form.
2. Under a decree of foreclosure which ascertained the amount due on a mortgage, directed a sale, and authorized execution to be issued for the deficiency, an execution might issue for the deficiency when ascertained, without further order of the court. This case distinguished from *Warren* v. *Raymond*, 12 *S. C.*, 9.
3. There being some presumptive evidence of a sale of the mortgaged premises before execution issued, the judge could not order a nonsuit; a verdict based upon the existence of such prior sale not disturbed.
4. Where a decree of foreclosure ordered land of one county to be sold in another, and execution to be issued for the deficiency after such sale, from which decree no appeal was taken, and subsequently the defendant made default to a summons requiring him to show cause why the execution issued in the case should not be renewed, neither he nor his vendee can dispute the title of a purchaser who bought under such renewed execution. *McNair* v. *Ingraham*, *ante*, 70, approved.

MR. JUSTICE McIVER concurred in result.

Before WALLACE, J., Colleton, October, 1883.

Action by J. H. Freer, trustee, against George Tupper and J. Moreland Campbell, commenced in July, 1883. The opinion states the case.

*Messrs. Boyle & Howe*, for appellant.

I. Defendant's motion for non-suit should be sustained: *First.* (Exc. 3.) "That his honor erred in not holding that the decree of foreclosure in the said cause of *Freer, trustee,* v. *Schultz,* was not such a decree as authorized the issuing of an execution for its enforcement, as no definite sum of money was found by the terms of the decree to be due from Schultz to Freer, trustee, and contained no order for the payment of the same, and, therefore, that the plaintiff had failed to prove any title to the land claimed." 13 *S. C.,* 254; 6 *Id.,* 106; 12 *Id.,* 27.

*Second.* (Exc. 1.) "That his honor erred in not holding that there being no evidence of a sale of the mortgaged premises, in the cause of *Freer, trustee,* v. *Schultz,* that plaintiff herein had failed to prove any title to the land claimed." Under §§ 12, 13, *Gen Stat.* (1872), 474, the mortgagor had the right at any time before the sale to pay the mortgage debt, with costs, and, therefore, execution could not issue until the sale had taken place. The sale was a contingency upon which leave was granted to issue an execution; hence the necessity of proving that sale did take place. 12 *S. C.,* 26; 17 *Id.,* 163.

*Third.* (Exc. 2.) "That his honor erred in not holding that if the sale of the mortgaged premises, in the cause of *Freer, trustee,* v. *Schultz,* was in pursuance of the decree of foreclosure in said cause had in Charleston county, the same was null and void, said mortgaged premises being in the county of Colleton; and that if said sale was had in any other than the county of Charleston, contrary to the terms of the decree of foreclosure in said cause of *Freer, trustee,* v. *Schultz,* said sale was null and void, and, therefore, that the plaintiff had failed to prove any title to the land claimed." The sale should have been made at the place fixed by law for the sale of property under execution. *Gen. Stat.* (1872), 474, § 14. The sale of real property under execution *must* be made in the county where it lies. *Code* (1872), § 310. Where a place is fixed by law at which sales of real property must be made, a sale made at any other place is void. *Rorer Jud. Sales,* § 779, and authorities there cited. The decree of foreclosure orders the land to be sold in Charleston county; a sale made in any other county would therefore be void. *Ibid,* § 103; 1 *Bail.,* 611. If this sale of the mortgaged premises

under the decree of foreclosure was void, all subsequent proceedings were also void.

*Fourth.* (Exc. 4.) "That his honor erred in not holding that there being no evidence of any report of sale by the sheriff in the said cause of *Freer, trustee,* v. *Schultz,* there was no judgment *in personam,* and no judgment upon which an execution could issue, and that, therefore, plaintiff had failed to prove any title to the land claimed." 12 *S. C.,* 9; 13 *Id.,* 254; 18 *Id.,* 324; 1 *Abb. Pr.,* 130; 8 *How. Pr.,* 66; 10 *Paige,* 116.

II. Defendant is entitled to a new trial because his honor, the presiding judge, charged: *First.* (Exc. 1.) "That the failure of Schultz to answer the summons upon him to show cause why the execution in the case of *Freer, trustee,* v. *Schultz,* should not be renewed, relieved the plaintiff from the obligation of proving that any deficiency existed after the sale of the mortgaged premises, and may be considered by the jury as an admission by Schultz that the execution had been regularly issued." The failure to show cause why an execution should not be renewed cannot render a void judgment upon which it issued valid, nor does the case of *Jackson* v. *Patrick,* 10 *S. C.,* 197, sustain the contrary as ruled by the Circuit judge. 13 *How. Pr.,* 178; 8 *Rich.,* 37; 3 *Abb.,* 243; 2 *Strob.,* 207; *Freem. Exec.,* §§ 73, 81; 18 *S. C.,* 324.

*Second.* And because his honor refused to charge: (Exc. 2.) "1. The jury are instructed that if they find the sale of the mortgaged premises, in the said cause of *Freer, trustee,* v. *Schultz,* was made in Charleston county, said sale was null and void, and their verdict must be for the defendant. 2. The jury are instructed that if they find the sale of the mortgaged premises, in the said cause of *Freer, trustee,* v. *Schultz,* was made other than in Charleston county, said sale was made contrary to the terms of the decree in said cause, and that said sale was null and void, and their verdict must be for the defendant." See *supra.*

III. His honor, the presiding judge, should have granted defendant's motion for a new trial, because the verdict was contrary to his honor's charge, because: (Exc. 1.) "That his honor, the presiding judge, having charged the jury as requested by this defen-

dant, 'that if they find there was no sale of the mortgaged premises, in the cause of *Freer, trustee,* v. *Schultz,* then their verdict must be for the defendant,' and there being no evidence whatsoever of said sale, said verdict was contrary to the law as charged by his honor." 16 *S. C.,* 1.

(Exc. 2.) "That his honor, the presiding judge, having charged the jury, as requested by this defendant, 'that no execution could issue on the decree of foreclosure, in the said cause of *Freer, trustee,* v. *Schultz,* save for the deficiency ascertained and specified by the sheriff's report of sale in said cause,' and there being no evidence whatsoever that the sheriff ever made a sale or report of the same in said cause, said verdict was contrary to the law as charged by his honor, the presiding judge." *Ibid.*

*Messrs. M. Glover and Henderson & Behre,* contra.

April 8, 1884. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an action for the recovery of a lot ($2\frac{1}{4}$ acres) and the buildings thereon, near Summerville, Colleton county, known as the "Schultz lot." The plaintiff claimed as purchaser at sheriff's sale, and proved a deed to himself from Robert Black, sheriff of Colleton county, December 5, 1882, purporting to have been made in accordance with a sale by him as sheriff, under execution in the case of *J. Hamilton Freer, trustee,* v. *F. C. Schultz.* The defendant, Tupper, alone answered. He admitted the sale and conveyance by the sheriff to the plaintiff, but insisted that the whole proceeding was void for the reason that there was no judgment in the case which authorized the issuing of an execution against property; and that he afterwards, viz., February 5, 1883, purchased the said lot from the alleged debtor, Schultz, and leased it to J. Moreland Campbell, who is in possession of the same.

The record in the case of *Freer, trustee,* v. *F. C. Schultz,* was introduced, which showed that it was an action to foreclose a mortgage on "the Club House tract of land in St. George's parish," &c., instituted in Colleton county, but that by consent it was removed to Charleston county; that on July 16, 1874, Judge Graham made a decree of foreclosure, which, among other things,

provided as follows: "It is adjudged that the mortgaged premises * * * be sold at public auction, in the county of Charleston, by the sheriff of said county, upon the first Monday of November next, or upon some convenient salesday thereafter, upon the terms, &c.; that the said sheriff give public notice of the time and place of such sale, &c.; that out of the moneys arising from such sale (after deducting the amount of his fees, &c.), the said sheriff pay to the plaintiff, trustee, or his attorney, the sum of $108.98, for costs and charges in this action, and also to the plaintiff, or his attorney, the amount so reported due as aforesaid, viz., the sum of $994.75, * * * or so much thereof as the purchase money of the mortgaged premises will pay of the same, take receipt therefor, and file it with his report of sale; that he pay over and deliver the surplus money, or surplus proceeds of sale, if any, to the clerk of this court; * * * that if the proceeds of such sale be insufficient to pay the amount so reported to be due to the plaintiff, * * * the said sheriff specify the amount of such deficiency in his report of sale, and that the defendant, Frederick C. Schultz, be required by execution to pay the same to the plaintiff, and that the purchaser, or purchasers, at such sale be let into possession on production of the sheriff's deed and a certified copy of the order confirming the report of sale," &c. This judgment of foreclosure was enrolled in Charleston on July 16th, 1874, and transcript thereof lodged in the clerk's office at Walterboro, Colleton county, on September 14, 1874, for decree $994.75, and costs $108.98.

On January 12, 1875, the clerk of Colleton issued an execution, which, after reciting the judgment of foreclosure, and stating that "the sum of seven hundred and thirty-three dollars and seventy-three cents ($733.73) is now actually due thereon," directed in the usual manner, that the said amount "be satisfied out of the personal property, or if not, &c., then out of the real property of the said judgment debtor," &c. This execution lay in the sheriff's office until April 20, 1882, when it was returned "unsatisfied." The defendant, Schultz, was served with summons to renew the execution, and having made default, Judge Hudson, on March 7, 1882, granted an order that the plaintiff have leave to renew his execution; and a renewed execution was

filed under which the house and lot in contention were levied and sold, and conveyed to the plaintiff.

When this evidence was offered, the defendant moved for a non-suit, which was refused by the presiding judge, who submitted the case to the jury, and under the charge they found for the plaintiff the premises in dispute and $100 damages. The defendant, Tupper, made a motion for a new trial, and that being refused, he appeals to this court. He made several requests to charge, some of which were charged and others refused by the presiding judge. It will not be necessary to copy them all here as they are in the "Case." We will only notice those which were refused, and as to which error of law is charged. Alleged errors of the judge in refusing to grant a new trial upon questions of fact cannot be considered here.

First in the order of time is the exception "that his honor erred in not holding that the decree of foreclosure, in the cause of *Freer, trustee,* v. *Schultz,* was not such as authorized the issuing of an execution for its enforcement, as no definite sum of money was found by the terms of the decree to be due from Schultz to Freer, and contained no order for the payment of the same, and, therefore, the plaintiff had failed to prove title to the land."

There is always a presumption in favor of legal process regular in form. The complaint in the case of *Freer* v. *Schultz* is not in the brief, and, therefore, we do not know its precise scope and purpose; but in the absence of proof to the contrary, we must assume that the action was not for what is called a "strict foreclosure" for the sale of the land and no more; but that it was in the usual form, and prayed not only for the sale of the land, but also judgment for the deficiency of the debt, if there should be any.

Taking this view and reading the decree of foreclosure carefully, it will be found that it adjudged three things: 1. That the sum of $994.75, besides the costs, were due by Schultz to Freer on the mortgage debt. 2. That the sheriff should sell the mortgaged premises at a future day (November), and pay to the plaintiff the amount so reported due, viz., $994.75, or so much thereof as the purchase money of the mortgaged premises will pay of

the same. And 3. "That if the proceeds of such sale be insufficient to pay the amount, &c., the sheriff specify the amount of such deficiency in his report of sale, and that the defendant, Frederick C. Schultz, be required by execution to pay the same," &c.

It seems to us that, taking the whole decree together, it did authorize an execution to issue for whatever might be the deficiency, if any. It is true that the precise amount for which it should issue was not named in the decree, for the reason that at the time it was rendered it could not be foreseen what the land would realize; but it directed the sheriff to make the sale and apply the proceeds, and that then the execution should issue for the "deficiency." It may be that it would have been the better practice for the plaintiff to reserve his final order until after the sheriff had made his report as to the sale, and then have moved for leave to issue execution for the exact balance in terms then ascertained; but there was a decree for the whole mortgage debt (subject to be reduced by the proceeds of sale), and we cannot say that it was fatally defective in failing "to authorize the issuing an execution for its enforcement."

In this respect the case is different from that of *Warren* v. *Raymond*, 12 *S. C.*, 9, cited and relied on by the appellant. In that case, as we understand it, there was no instant decree for the whole debt, but the decree "directed a foreclosure and sale at a future day, unless a specified sum was previously paid, with the privilege to plaintiff, in case of deficiency, to enroll his decree and issue execution for the balance due; a money decree was instantly enrolled and execution issued for the whole sum specified. *Held*, that the enrolment and execution were erroneous, and created no lien on the defendant's property. Distinction drawn between this case and that of *Blake* v. *Heyward, Bail. Eq.*, 201."

It is next contended: "That his honor erred in not holding that, there being no evidence of a sale of the mortgaged premises in said case of *Freer* v. *Schultz*, there was no judgment *in personam*, and no judgment upon which an execution could issue, and that, therefore, plaintiff failed to prove any title to the land." There is no doubt that the sale as directed, and application of

the proceeds on the debt, were conditions precedent to the issuing of the execution for the "deficiency;" and it seems to us that it would have been better if the sale by the sheriff and his return thereon had been put in evidence, especially as the judgment of foreclosure had not fixed the precise amount of the deficiency for which the execution should issue. But those were both questions of fact, and the order directing sale in November, and the time when the execution issued, January, 1875, after the time indicated for the sale, and the reduced amount ($733.73) for which it issued, as well as the presumption that the officers of court did their duty, afforded some evidence that there had been a sale, which the judge left to the jury, and, although there may have been some risk in it, we cannot say that he erred in so doing. He could not properly say there was no evidence upon the subject and non-suit the plaintiff on that ground. The jury must have found the fact that there had been a sale and proper application of the proceeds.

But assuming that the sale was made, it is still further ingeniously urged for the appellant "that his honor erred in not holding that if the sale was made in Colleton, it was void, as being in violation of the decree of foreclosure which ordered it made in Charleston; and that if it was made in Charleston, it was void under the general law of force at the time, which declared that a sale of real property under execution 'must be made in the county where it lies.' Code (1872), § 310." The defendant, Tupper, holds under Schultz, chargeable with plaintiff's prior claim as purchaser under an execution in a public office, and can make no defence which Schultz could not. Tupper is a privy in estate of Schultz, and could receive from him no higher rights than he possessed.

It will be observed that Schultz is not a party in this case, and has never made the defence which is now set up by his alienee. He was a party to the foreclosure proceedings instituted in Colleton county, but transferred, by his consent, to the county of Charleston. He did not appeal from the decree of foreclosure there made ordering the land sold in that county; and afterwards, when he was served in Colleton county with a copy of the summons proposing to renew the execution which had

issued in that county for the reduced amount of $733.73, he made no objection or defence to the same.   If the land had never been legally sold in accordance with the decree rendered in Charleston by his consent, and the proceeds of sale properly credited, he then had an opportunity to make all such defences, and having failed to do so, neither he nor any one holding under him with notice can now make them, but is bound by that species of estoppel known as *res adjudicata,* and "must ever afterwards hold his peace."   As was said in the late case of *McNair* v. *Ingraham, ante,* 74: "The defence could have been made—indeed, the proceeding invited him to make it, and failing to do so, the result must be the same as if he had formally made it and failed. *Ingram* v. *Belk,* 2 *Strob.,* 208; *Jackson* v. *Patrick,* 10 *S. C.,* 199; *Lawrence* v. *Grambling,* 13 *S. C.,* 127."

The judgment of this court is that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE SIMPSON concurred.

MR. JUSTICE MCIVER.   I concur in the result, upon the ground that the question as to the legality and sufficiency of the judgment and execution was adjudged by the order to renew the execution; and Schultz being thus estopped from raising the question, one who claims under him since the sale is likewise estopped.